UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHEN LANCASTER,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>Defendant. | Case No. 10-cv-0088-MJP-JPD<br><br>REPORT AND RECOMMENDATION |

## I.   INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which partially denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

## II.   FACTS AND PROCEDURAL HISTORY

Plaintiff is a 54-year-old man with a high school education. Administrative Record ("AR") at 106, 127.  His past work experience includes employment as a laborer, maintenance worker and senior warehouseman. AR at 124.  Plaintiff was last gainfully employed in 2005. AR at 121.

REPORT AND RECOMMENDATION
PAGE - 1

Plaintiff asserts that he is disabled due to bipolar disorder, migraines, and back and shoulder injuries. AR at 123. He asserts a disability onset date of January 1, 2006. AR at 106.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 54, 57, 62, 64. Plaintiff requested a hearing which took place on April 2, 2009. AR at 32-49. On May 27, 2009, the ALJ issued a partially favorable decision finding Plaintiff disabled as of September 1, 2007. AR at 12-30. However, the ALJ found Plaintiff not disabled and denied benefits for the period of January 1, 2006 to August 31, 2007, based on the ALJ's finding that Plaintiff could perform a specific job existing in significant numbers in the national economy during that period. *Id.*

On November 19, 2009, the Appeals Council denied Plaintiff's request for review, AR at 1, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On January 14, 2010, Plaintiff timely filed the present action challenging the unfavorable portion of the Commissioner's decision. Dkt. No. 1.

### III. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V. EVALUATING DISABILITY

As the claimant, Plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g),

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION
PAGE - 4

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## VI.   DECISION BELOW

On May 27, 2009, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since January 1, 2006, the alleged onset date.

3. Since the alleged onset date of disability, the claimant has had the following severe impairments: obesity, shoulder impairment, left knee impairment status post arthroscopy, polysubstance abuse.

4. Since the alleged onset date of disability, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, prior to September 1, 2007, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b); specifically, to lift and/or carry 20 pounds occasionally and 10 pounds frequently, to stand and/or walk (with normal breaks) for a total of about six hours in an eight hour day.  The claimant could perform occasional reaching overhead and occasional overhead lifting.  The claimant was capable of performing both simple and detailed tasks, with only incidental contact with the public and co-workers.

6. After careful consideration of the entire record, I find that, beginning on September 1, 2007, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404-1567(a) and 416.967(a); specifically, to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, to stand and/or walk for a total of about two hours in an eight-hour workday, and to sit for a total of about six hours in an eight hour workday.  The claimant continued to have the ability to perform simple and detailed work that required only superficial social interaction.

7. Since the alleged onset date of disability, the claimant has been unable to perform past relevant work.

REPORT AND RECOMMENDATION
PAGE - 5

8. The claimant was born xxxxxx, 1955[2] and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

9. The claimant has at least a high school education and is able to communicate in English.

10. Prior to September 1, 2007, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Beginning on September 1, 2007, the claimant has not been able to transfer any job skills to other occupations.

11. Prior to September 1, 2007, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed.

12. Beginning on September 1, 2007, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform.

13. The claimant was not disabled prior to September 1, 2007, but became disabled on that date and has continued to be disabled through the date of this decision.

14. The claimant's history of substance use disorder(s) is not a contributing factor material to the determination of disability.

AR at 14-30.

## VII.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ properly evaluated the medical evidence.

2. Whether the ALJ erred by not obtaining testimony from a Vocational Expert.

Dkt. No. 8 at 3-17; Dkt. No. 14 at 5-20; Dkt No. 15 at 2-10.

---

[2] The actual date of birth is deleted in accordance with Western District of Washington Local Rule CR 5.2.

REPORT AND RECOMMENDATION
PAGE - 6

## VIII. DISCUSSION

### A. The ALJ Properly Evaluated the Medical Evidence.

#### 1. Standard of Review for Medical Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

     2.  *The ALJ's Treatment of Opinions of Mary Bartels, M.D.*

Dr. Bartels evaluated Plaintiff in March 2006 for the Department of Social & Health Services. AR at 174-77. Dr. Bartels assessed Plaintiff with bipolar disorder and cocaine abuse. AR at 175. She also opined that Plaintiff had severe depression, and had marked limitations with regard to suicidal trends, verbal expression of anxiety or fear, and social withdrawal. *Id.* Dr. Bartels found marked limitations with respect to ability to understand, remember and follow complex instructions; ability to learn new tasks; ability to exercise judgment and make decisions; ability to relate appropriately to coworkers and supervisors; and ability to interact appropriately in public contacts. AR at 176. Dr. Bartels also assessed Plaintiff with severe limitations in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. *Id.*

The Court cannot conclude that the ALJ erred in his evaluation of Dr. Bartels' opinions. The ALJ accorded Dr. Bartels' opinions "very little weight," and provided several clear and convincing reasons in support of his assessment. AR at 23. The ALJ observed that Dr. Bartels' opinions were provided on check-the-box forms with no support or narrative justification. *Id.* The ALJ also noted that Dr. Bartels only conducted a "face-to-face interview" with Plaintiff, which indicates that the opinions were not supported by a mental status examination or other objective findings normally associated with a psychiatric

evaluation. *Id.* Moreover, the ALJ noted that the lack of narrative justification or objective findings indicates that Dr. Bartels' check-the-box opinions were based primarily, if not exclusively, on Plaintiff's subjective complaints, which the ALJ found lack credibility and Plaintiff does not challenge that finding. *Id.* Lastly, the ALJ correctly pointed out that this evaluation took place while Plaintiff was still abusing cocaine, and that the record establishes that Plaintiff's mental health symptoms have since improved with treatment and sobriety. *Id.* Indeed, Dr. Bartels made a point to note that cocaine use can exacerbate the symptoms associated with bipolar disorder, which indicates that she believed that Plaintiff's drug use affected his mental health. *See* AR at 176. In sum, the ALJ provided clear and convincing reasons for according "very little weight" to Dr. Bartels' opinions, and the ALJ's conclusion is supported by substantial evidence in the record.

### *3.     The ALJ's Treatment of Opinions of Tina Shereen, M.D.*

Dr. Shereen saw Plaintiff for several months beginning in March 2006. AR at 179-187. Dr. Shereen noted that Dr. Bartels had diagnosed Plaintiff with bipolar disorder and prescribed him medications. AR at 186. Plaintiff admitted a history of alcohol and cocaine abuse but stated that he was now clean and sober. *Id.* Dr. Shereen noted that Plaintiff reported a "good response" to the medications for his bipolar disorder and that he was experiencing "stabilization of his mood." *Id.* Dr. Shereen refilled Plaintiff's prescriptions and provided follow-up care. Plaintiff visited Dr. Shereen in mid-April 2006 and he reported that his mood was less stable than before, so Dr. Shereen increased the dosage of his medication. AR at 182. In May 2006, Plaintiff reported that he was satisfied with his medication regimen, and his only complaint was an occasional tremor. AR at 181. Dr. Shereen stated that they would consider modifying his dosing due to the tremor. *Id.*

Plaintiff takes issue with the ALJ's assessment of Dr. Shereen's opinions because the ALJ did not indicate how much weight he gave to her opinions. However, it is clear from the ALJ's decision that he considered and accepted Dr. Shereen's opinions, which were relatively

REPORT AND RECOMMENDATION
PAGE - 9

mild. AR at 18, 19. In any case, Dr. Shereen's opinions would not support a finding of disability for the relevant period. As such, any failure by the ALJ to specifically state how much weight he accorded to Dr. Shereen's opinions was harmless error.

### 4.  *The ALJ's Treatment of Opinions of Richard Washburn, Ph.D.*

Dr. Washburn evaluated Plaintiff in September 2006 for the Department of Social & Health Services. AR at 193-198. Dr. Washburn assessed Plaintiff with bipolar disorder and alcohol dependence in recent remission, cocaine abuse in remission and personality disorder, not otherwise specified. AR at 195. Dr. Washburn also assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 55.[3] Dr. Washburn found Plaintiff's depressed mood to be severe, and found his verbal expression of anxiety or fear to be marked. AR at 195. Dr. Washburn concluded that Plaintiff had marked limitations in his ability to relate appropriately to coworkers and in his ability to interact appropriately in public contacts, and had severe limitations in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. AR at 196. Dr. Washburn also stated that Plaintiff "likely medicates himself with alcohol and cocaine to help him cope with Bipolar [disorder]," and that Plaintiff's alcohol and drug abuse "substitutes for [a] more constructive approach to coping with bipolar [disorder]." AR at 195-96. In his handwritten notes, Dr. Washburn opined that Plaintiff's bipolar disorder and substance abuse appear to be closely related. AR at 198. He also opined that Plaintiff "does not have the emotional stability necessary to cope with the normal stress of employment." AR at 198.

The Court cannot conclude that the ALJ erred in his evaluation of Dr. Washburn's opinions, to which he accorded "little weight." AR at 24. The ALJ observed that Dr. Washburn's assessed marked limitations were inconsistent with the GAF score of 55, which

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34.

indicates only "moderate symptoms" or "moderate difficulty in social or occupational functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000); AR at 24. In addition, the ALJ noted that Dr. Washburn's sole narrative justification for his assessed marked limitations was that "[Plaintiff] reports high levels of depression and has self-medicated with drugs and alcohol" and "[Plaintiff] reports some thoughts of suicide and moderate anger which is cause for concern." AR at 24, 196. This makes plain that Dr. Washburn's limitations indicated on the check-the-box forms were based on Plaintiff's subjective complaints. The ALJ also discounted Dr. Washburn's opinions because Dr. Washburn concluded that Plaintiff's bipolar disorder and substance abuse appear to be closely related, but did not specify to what degree Plaintiff's substance abuse -- as opposed to the bipolar disorder -- was responsible for the assessed limitations. AR at 24. In addition, while Dr. Washburn opined in his handwritten notes that Plaintiff lacks the "emotional stability" to tolerate the normal stress of employment, this appears to be based only on Plaintiff's subjective reports of thoughts of suicide and moderate anger. AR at 196, 198. In short, the ALJ did not err in giving "little weight" to Dr. Washburn's opinions.

     5.  *The ALJ's Treatment of Opinions of George Heffner, M.D.*

Dr. Heffner saw Plaintiff at the Kent Community Health Center beginning in September 2006. AR at 214-220. Dr. Heffner stated that Plaintiff reported bipolar depression. AR at 218. Plaintiff indicated that his medication helped to keep him from becoming manic, but that his depression had gotten worse. *Id.* Dr. Heffner assessed Plaintiff with fatigue, bipolar depression and insomnia. *Id.* Dr. Heffner refilled Plaintiff's medications and provided care. AR at 214-16, 218. He prescribed Wellbutrin for the increased depression. AR at 218. Dr. Heffner also referred Plaintiff to a psychologist. *Id.* The psychologist reported that Plaintiff complained of feeling depressed, and that walking helped with his mood. AR at 217. He diagnosed Plaintiff with bipolar disorder and depression. *Id.* He also noted that Tegretol

seemed helpful in stabilizing Plaintiff's moods, but has not helped with the depression as the Lithium did previously. *Id.* The psychologist reminded Plaintiff that it would take some time to notice the Wellbutrin's antidepressant effects, encouraged walking and continuing in AA meetings, and educated Plaintiff on the management of depression. *Id.* At a follow-up appointment with Dr. Heffner, Plaintiff reported that the Wellbutrin helped, but later asked to discontinue it because it did not elevate his mood and he was having difficulty sleeping. AR at 215, 216.

Plaintiff takes issue with the ALJ's assessment of Dr. Heffner's opinions because the ALJ did not indicate how much weight he gave to his opinions. However, the ALJ considered and accepted Dr. Heffner's opinions, which were relatively mild. AR at 19, 20. Also, Dr. Heffner's opinions are consistent with the ALJ's determination that Plaintiff was not disabled during this period. Therefore, any failure by the ALJ to specifically state how much weight he accorded to Dr. Heffner's opinions was harmless error.

### 6. *The ALJ's Treatment of Opinions of Michael Snyder, M.D.*

Dr. Snyder evaluated Plaintiff at Seattle Mental Health in December 2006. AR at 222-25. Plaintiff reported to Dr. Snyder that Dr. Bartels had earlier diagnosed him with bipolar depression and started him on medication. AR at 222. Dr. Snyder noted that Plaintiff reported feeling depressed, but Plaintiff added that his current residence is "depressing because a baby recently died of SIDS there." *Id.* As part of the mental status examination, Dr. Snyder noted that Plaintiff had a restricted range of affect; dysphoric mood; good eye contact; logical thought process; appropriate thought content; no suicidal thoughts; full orientation; and no gross cognitive or memory deficits. AR at 224. Dr. Snyder diagnosed Plaintiff with moderate bipolar disorder and depression and polysubstance dependence in full sustained remission, and assessed a GAF score of 45. AR at 225. Dr. Snyder continued Plaintiff on the Tegretol medication and also prescribed Lamotrigine. *Id.*

The ALJ accorded "little weight" to Dr. Snyder's assessed GAF score of 45 because it is not explained and is inconsistent with Plaintiff's level of functioning. AR at 20. The Court agrees. There is no explanation for the GAF score, and, moreover, it is inconsistent with Dr. Snyder's mental status examination, which was generally within normal limits with the exception of a depressed mood, which was at least in part situational due to the fact that a baby living in Plaintiff's residence had recently died. *See* AR at 215, 222, 224. In addition, the GAF score is inconsistent with Dr. Snyder's diagnosis of "moderate" bipolar disorder and depression. *See* AR at 225. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000). However, such "serious symptoms" are not indicated by Dr. Snyder's evaluation. The low GAF score is also at odds with Plaintiff's level of functioning, which, for example, included attending church twice monthly, attending AA meetings three or four times daily, eating out, walking with friends, and going to lunch with his AA sponsor. AR at 252. These daily activities indicate that Plaintiff is able to interact appropriately in group and individual settings. In sum, the ALJ did not err in according little weight to Dr. Snyder's assessed GAF score of 45.

### 7. *The ALJ's Treatment of Opinions of Paul Michels, M.D.*

Dr. Michels performed a psychiatric evaluation of Plaintiff in February 2007. AR at 247-253. Dr. Michels diagnosed Plaintiff with cocaine dependence in reported early remission, alcohol dependence in reported full sustained remission, depressive disorder not otherwise specified and anxiety disorder not otherwise specified. AR at 252. Dr. Michels also assessed a GAF score of 55, which, as noted previously, indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning." *Id.* Notably, Plaintiff told Dr. Michels that his last job ended because of chemical dependency issues, which indicates that

REPORT AND RECOMMENDATION
PAGE - 13

Plaintiff's prior substance abuse was the reason he stopped working, rather than any mental or physical condition. AR at 250. Plaintiff was also unclear in describing to Dr. Michels job-related difficulties associated with his manic symptoms. AR at 251.

The results of Dr. Michels' mental status examination were generally within normal limits. AR at 251. Dr. Michels also noted that Plaintiff "does not clearly define or describe any clear or convincing symptoms of mania or hypomania." AR at 252. In addition, Dr. Michels stated that Plaintiff's history of cocaine and alcohol abuse "probably significantly confounds the diagnostic considerations," and found that if Plaintiff "was using at the time of these emotional difficulties on the job, it would be much more likely that this would be a substance related problem than an underlying Axis I condition." AR at 253. Dr. Michels concluded that Plaintiff's concentration and focus were fair, pace and persistence were good, and that he has the intellectual capacity to understand, remember and follow complicated or simple instructions. *Id.* Dr. Michels also found that Plaintiff seemed capable of interacting appropriately with others, but that stress could cause significant psychological decompensation. *Id.*

The ALJ did not err in his evaluation of Dr. Michels' report, which he accepted and found to be consistent with the conclusions of the state agency doctors. AR at 21, 22. Moreover, Dr. Michels' psychiatric evaluation of Plaintiff was consistent with the ALJ's non-disability determination during the period at issue. While Plaintiff vaguely asserts that the ALJ failed to "discuss the report in the context of the other reports" and to "weigh the limitations inherent in the report," any such error was harmless.

*8.    The ALJ's Treatment of Opinions of Kathryn Draper, ARNP*

Ms. Draper, a psychiatric nurse, began treating Plaintiff in January 2007. AR at 274-343, 477-489. Ms. Draper met with Plaintiff each month and monitored his medications, which is documented in her treatment notes. AR at 275-343. In addition, Ms. Draper wrote two letters with regard to Plaintiff, the second of which was at the request of Plaintiff's

counsel. In the second letter, Ms. Draper stated that Plaintiff has had two episodes of depression with complete social withdrawal, poor concentration, low energy and suicidal feelings, which Ms. Draper believed would greatly impair Plaintiff's ability to perform and keep a job. AR at 477. In addition, Ms. Draper opined that Plaintiff "would have difficulty working in any job because of deficits in ability to learn, maintain a regular schedule, interact appropriately with others, concentrate and remember job tasks . . . ." *Id.* Ms. Draper completed and included with her second letter a Mental Residual Functional Capacity Assessment, which noted several marked limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction and adaptation. AR at 478-481. Ms. Draper also completed a Social Security Disability Mental Impairment Report for Plaintiff's counsel, in which she opined that Plaintiff has a disturbance of mood accompanied by a depressive syndrome and a manic syndrome. AR at 482-87. Lastly, Ms. Draper opined that Plaintiff had marked limitations in the areas of maintaining social functioning and concentration, persistence and pace, and that Plaintiff had three repeated episodes of decompensation, each of extended duration. AR at 488.

Ms. Draper is a nurse, and therefore she is not considered an "acceptable medical source," and is instead considered an "other source." *See* SSR 06-03p, 2006 WL 2329939, at *2. When an ALJ determines what weight to accord "other sources," the ALJ generally should explain any weight given to "other sources," or at the very least, discuss the evidence from "other sources" so that a claimant or subsequent reviewer can follow the adjudicator's reasoning when such opinions may have an effect on the outcome of the case. *See* SSR 06-03p, 2006 WL 2329939, at *6.

Here, the ALJ did not err in his evaluation of Ms. Draper's opinions, as he provided a sufficient explanation for declining to give her opinions significant weight. *See* AR at 22-23. The ALJ properly noted that Ms. Draper's opinions regarding Plaintiff's limitations as stated in her second letter and accompanying documents to Plaintiff's counsel are unsupported by and

REPORT AND RECOMMENDATION
PAGE - 15

inconsistent with her contemporaneous treatment notes, which were generally unremarkable save for notations regarding Plaintiff's reported episodes of depression. *See* AR at 22-23, 275-343. In addition, the ALJ noted that Ms. Draper is not considered an "acceptable medical source," and that her opinions are inconsistent with the record as a whole. AR at 23. Indeed, Ms. Draper's opinions were submitted at the behest of Plaintiff's counsel well over a year after the pertinent time period, and her rather severe opinions are at odds with Plaintiff's daily activities and the milder opinions of several physicians, including, for example, the opinions of Dr. Michels, Dr. Heffner, Dr. Shereen and state agency medical consultant Alex Fisher, Ph.D. As such, the ALJ did not err in declining to accord significant weight to Ms. Draper's opinions.

*9.     The ALJ's Treatment of Opinions of Non-Examining Consultants*

Plaintiff asserts that the ALJ erred by relying on the opinions of non-examining state agency medical consultants in reaching the conclusion that Plaintiff was not disabled for the pertinent time period. As an initial matter, the ALJ only accorded "significant weight" to the opinions of one of the state agency medical consultants, Alex Fisher, Ph.D. *See* AR at 22. Moreover, the ALJ did not rely solely on Dr. Fisher's opinions in making his non-disability finding, as Plaintiff seems to suggest.

Dr. Fisher conducted a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment in February 2007. AR at 254-271. Dr. Fisher diagnosed Plaintiff with bipolar disorder, depressed, without psychosis and polysubstance abuse in sustained remission, and opined that Plaintiff had mild to moderate functional limitations. AR at 257, 262, 264. As to the Mental Residual Functional Capacity Assessment, Dr. Fisher concluded that Plaintiff was either not significant limited or moderately limited in the areas of understanding and memory, sustained concentration and persistence, social interaction and adaptation. AR at 268-69. Dr. Fisher found Plaintiff to be "pretty functional," and concluded that Plaintiff: can understand and remember detailed material when not limited by the effects of drug and alcohol abuse; is somewhat depressed but is not so symptomatic that he would be

REPORT AND RECOMMENDATION
PAGE - 16

unable to carry out detailed instructions with reasonable consistency; and would be able to tolerate incidental contact with the public and with coworkers. AR at 270.

The Court concludes that the ALJ did not err in according "significant weight" to the opinions of Dr. Fisher. The ALJ properly determined that Dr. Fisher's assessment was consistent with the opinions of Dr. Michels, and with the medical record, including, for example, the unremarkable treatment notes of Ms. Draper and Dr. Heffner, as well as the findings by Drs. Washburn and Michels that Plaintiff was intelligent and cognitively intact. *See* AR at 197, 214-220, 251-53, 275-343. Dr. Fisher's opinions were also consistent with Plaintiff's daily activities, which revealed broad levels of social interaction in group and individual settings. *See* AR at 252.

B. The ALJ Did Not Err by Relying Upon the Medical-Vocational Guidelines.

Plaintiff contends that the ALJ erred by relying upon the Medical-Vocational Guidelines ("the Guidelines") in view of the nonexertional limitations found by the ALJ that would bear on light, unskilled work, specifically, simple and detailed tasks and incidental contact with the public and coworkers. *See* AR at 17. Plaintiff asserts that the ALJ should have instead solicited testimony from a Vocational Expert ("VE") at the hearing.

The ALJ may rely on the Guidelines "only when the grids accurately and completely describe the claimant's abilities and limitations." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) (internal quotation marks and citations omitted). That is, when nonexertional impairments limit a claimant's functional capacity in ways not contemplated by the Guidelines, the Guidelines are inapplicable. *Id.* However, the Guidelines are inapplicable only if a claimant's nonexertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations. *See Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). In other words, if the claimant's nonexertional limitations do not significantly erode the pertinent occupational base, the ALJ may rely upon the Guidelines as a framework. *See* SSR 83-12, 1983 WL 31253; SSR 83-14, 1983 WL 31254, at *3 ("A

particular . . . nonexertional limitation may have very little effect on the range of work remaining that an individual can perform. The person, therefore, comes very close to meeting a table rule which directs a conclusion of "Not disabled.").

The Court concludes that the ALJ did not err by relying upon the Guidelines as a framework for finding Plaintiff not disabled prior to September 1, 2007. The ALJ reasonably concluded that Plaintiff's nonexertional limitations of simple and detailed tasks and incidental contact with the public and coworkers were not "sufficiently severe" so as to significantly limit the range of light, unskilled work permitted by Plaintiff's exertional limitations. *See* AR at 27-29. Indeed, light, unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis." SSR 85-15, 1985 WL 56857, at *4. Therefore, the ALJ's use of the Guidelines as a framework was not error.

## IX.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED. A proposed order accompanies this Report and Recommendation.

DATED this 19th day of July, 2010.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge